IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF PUERTO RICO

**AFFIDAVIT IN SUPPORT OF COMPLAINT**

I, Edison Parra, a Special Agent with the Drug Enforcement Administration (DEA), being duly sworn, depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I am a Special Agent (SA) of the DEA and, as such, I am an investigative or law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510 (7), that is, an officer of the United States who is empowered to conduct criminal investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section, 2516.

2. As a Special Agent with the DEA, I have conducted and assisted in investigations into the unlawful possession, possession with the intent to distribute, distribution of controlled substances, and importation of controlled substances, and with the associated conspiracies in violation of Title 21, United States Code, Sections 841, 843, 846, 952, and 963. I have received detailed instructions and conducted various complex investigations concerning the unlawful importation and distribution of controlled substances, the laundering and concealment of drug proceeds, the illegal use of communication facilities by drug traffickers in furtherance of their criminal activities and conspiracies to engage in these activities. I have experience conducting surveillance operations, analyzing telephone records, interviewing witnesses, executing search and arrest warrants, participating in wire and electronic physical surveillance and other investigative techniques. The investigations in which I have participated have resulted in the arrest, prosecution and conviction of individuals who have smuggled, received and distributed controlled substances, including marijuana and cocaine as well as the seizure of those illegal drugs and proceeds of the sale of those illegal drugs.

3. Because of my personal participation in this investigation, and because of information provided to me by other agents and officers, and my personal observations, I am familiar with the facts and circumstances of this investigation. My experience in investigating drug offenders, my education, my conversations with senior drug agents and chemists, and my specialized training formed a basis of the opinions and conclusions set forth below which I drew from the facts set forth herein.

4. The information contained in this affidavit is based on my personal knowledge and observations during the course of this investigation; on information conveyed to me by other law enforcement officials; and on my review of records, documents, and other physical evidence obtained during this investigation. This affidavit is not intended to include every fact observed by me or known by the government.

5. Based on my training and experience, my knowledge of this case, and my discussions with other law enforcement officers, I am familiar with narcotic traffickers, money launderers' methods, schemes, and operations, and know the following facts:

### FACTS IN SUPPORT OF PROBABLE CAUSE

6. On January 17, 2026, the Drug Enforcement Administration (DEA) Task Force Group 3 (TFG-3) received information that during the evening hours of the same date, a drug smuggling vessel would be making landfall in the area of Rompe Olas, Aguadilla, Puerto Rico, with an undetermined amount of narcotics onboard. Therefore, law enforcement personnel established surveillance in the vicinity of Rompe Olas, Aguadilla, Puerto Rico.

7. At approximately 8:50 p.m., law enforcement surveillance units observed a 1995 green GMC Sierra bearing the license plate (LP) 901287 (hereinafter referred to as the TARGET VEHILCE) arrive at the Rompe Olas ramp while towing an empty boat trailer. Soon after the

TARGET VEHICLE positioned itself by the ramp, a white 1992 Offshore 24-foot cuddy cabin style vessel bearing Puerto Rico registration PR-1903-CC (hereinafter referred to as the TARGET VESSEL) moved rapidly towards the TARGET VEHILCE to remove the TARGET VESSEL from the water and onto the trailer in a manner that appeared suspicious. Therefore, a Puerto Rico Police Bureau (PRPB) Fuerzas de Rápida Acción (FURA) unit (unmarked police Dodge Charger), with Police lights energized, intervened with the TARGET VEHICLE at the ramp. During the initial approach, the PRPB agents identified the captain of the TARGET VESSEL as (1) Luis Alfredo MILIÁN-REYES and the driver of the TARGET VEHICLE as (2) Rafael RUSCALLEDA-GONZÁLEZ and. The PRPB agents informed both individuals that the intervention was in support of Puerto Rico Act No. 430.  When PRPB reviewed the documents for the TARGET VESSEL, agents observed that the TARGET VESSEL was not registered to either MILIÁN-REYES or RUSCALLEDA-GONZÁLEZ and that MILIÁN-REYES did not possess a valid boating license. Furthermore, agents observed that the TARGET VESSEL was weighing down the trailer more than usual, thus raising additional suspicion. Therefore, agents requested consent to search the TARGET VESSEL, which MILIÁN-REYES provided in writing.

8. During initial questioning, MILIÁN-REYES (captain), stated that he had been fishing red snapper in the fishing region referred to as the Pinchinchos, which he stated was approximately 30 to 40 nautical miles (NM) from the main island of Puerto Rico, and that RUSCALLEDA-GONZÁLEZ was helping him tow the TARGET VESSEL. There was fresh catch and fishing equipment in the TARGET VESSEL.

9. Los Pinchinchos is a fishing region located between the Island of Desecheo, Puerto Rico, and the Dominican Republic. Based on the statements made by MILIÁN-REYES, noting that he

navigated in international waters and his written consent for the search of the TARGET VESSEL, a border search inspection was conducted by Border Patrol agents.

10. During the consensual border search of the TARGET VESSEL, a U.S. Border Patrol trained narcotics canine (K-9) conducted a free air sniff of the inside of the TARGET VESSEL and positively alerted to the presence of narcotics coming from the floor space leading to the cabin area of the TARGET VESSEL. In addition, a Viking handheld X-ray machine was used to search the TARGET VESSEL, which led to agents observing abnormalities underneath the flooring of the TARGET VESSEL, which, based on the agents' training and experience, resembled narcotics concealed inside a hidden compartment. At that point, agents informed MILIÁN-REYES and RUSCALLEDA-GONZÁLEZ that the TARGET VESSEL would have to be transported to the U.S. Border Patrol Ramey Station for a more detailed search. At that time, RUSCALLEDA-GONZÁLEZ informed agents that he had his registered firearm, a Glock 23 Gen4, inside the drivers' side door of the TARGET VEHICLE. Agents took custody of the firearm for safety, which was loaded.

11. During the more detailed search of the TARGET VESSEL, agents discovered two hundred and seventy-eight (278) individually packaged brick-shaped packages of a white powdery substance that field tested positive for the properties of cocaine, a Schedule II Narcotic Drug Controlled Substance, and weighed approximately three hundred and thirty-seven (337) kilograms hidden inside hidden compartments underneath the flooring throughout the TARGET VESSEL. Subsequently, MILIÁN-REYES and RUSCALLEDA-GONZÁLEZ were placed under custody.

12. During post-arrest interviews, both individuals were informed of their Miranda Rights in writing and in Spanish. Additionally, both individuals provided written consent for the search

of their cellular devices.

13. During the post arrest interview, MILIÁN-REYES admitted to having knowledge of the narcotics onboard the TARGET VESSEL and admitted to conducting a sea transfer in international waters. According to MILIÁN-REYES he used a red older model Ford F-150 to tow the TARGET VESSEL to the ramp to embark on the venture in the early morning hours of January 15, 2026, which was driven away by an unknown member of the drug trafficking organization once the TARGET VESSEL was in the water. Therefore, on January 17, 2026, MILIÁN-REYES called RUSCALLEDA-GONZÁLEZ via phone to assist in towing the TARGET VESSEL from the Rompe Olas boat ramp.

14. During RUSCALLEDA-GONZÁLEZ post arrest interview, he denied having knowledge of the narcotics onboard the TARGET VESSEL and stated that he was only helping MILIÁN-REYES because he (MILIÁN-REYES) had vehicle issues and did not have a way to tow the TARGET VESSEL. However, during the consensual search of his cellphone, agents discovered several brief WhatsApp calls from approximately 6:44 p.m. to 7:01 p.m., followed by a message conversation at 7:07 p.m., between MILIÁN-REYES and an individual conducting counter surveillance and notifying him (RUSCALLEDA-GONZÁLEZ) with a siren emoji and message stating that "Charger en la entrada" (Charger at the entrance), to which RUSCALLEDA-GONZÁLEZ acknowledged with a thumbs up emoji. At the time of these communications, a law enforcement surveillance unit was positioned near the entrance of the Rompe Olas ramp parking lot in an unmarked police Dodge Charger. It is common practice for drug traffickers to conduct counter-surveillance to ensure that rival organizations or law enforcement do not pose a threat to them and their illicit operation, by causing physical harm, stealing illicit materials and stealing assets. Drug trafficking organization often conduct

counter surveillance to avoid law enforcement apprehension, loss of assets or illicit materials resulting from law enforcement seizures Counter surveillance measures are carried out by members of the organization actively participating in a joint effort to safekeep the narcotics and other assets to avoid any potential seizures from law enforcement.

15. During the consensual search of RUSCALLEDA-GONZÁLEZ's cellphone, agents observed approximately six (6) WhatsApp calls between MILLIÁN-REYES and RUSCALLEDA-GONZÁLEZ's on or around the time of the events at the Rompe Olas ramp resulting in the seizure of the TARGET VESSEL.

16. During the search of the mounted Global Positioning System (GPS) onboard the TARGET VESSEL, agents observed a marked route from Aguadilla, Puerto Rico, to a waypoint approximately sixty (60) nautical miles west of Aguadilla and approximately twenty (20) nautical miles northeast of the eastern coast of the Dominican Republic.

17. In total, two (2) cellphones, one (1) GPS, one (1) firearm, and approximately three hundred and thirty-seven (337) kilograms of suspected cocaine, a Schedule II Narcotic Drug Controlled Substance, were seized.

18. Based on my experience, the quantity of cocaine, a Schedule II Narcotic Drug Controlled Substance, of three hundred and thirty-seven (337) kilograms is not for personal consumption but is rather for distribution.

## CONCLUSION

19. Based upon my training, experience, and the abovementioned facts, I believe that sufficient probable cause exists to demonstrate that: (1) MILIAN-Reyes and (2) RUSCALLEDA-GONZÁLEZ, have committed the following violation of Federal Laws:

- Title 21, <u>United States Code</u>, Section 963, 960(b)(1)(B)(ii)- Conspiracy to Import 5 kilograms or more of cocaine, a Schedule II narcotic Drug Controlled Substance;

- Title 21, <u>United States Code</u>, Section 952- Importation of cocaine, a Schedule II narcotic Drug Controlled Substance;

- Title 21, <u>United States Code</u>, Section 846-Conspiracy to Possess with Intent to Distribute five (5) kilograms or more of cocaine, a Schedule II Narcotic Drug Controlled Substance; and

- Title 21, <u>United States Code</u>, Section 841(a)(1) and (b)(1)(A)(ii), Possession with Intent to Distribute Cocaine, a Schedule II Narcotic Drug Controlled Substance;

20. Furthermore, I believe that sufficient probable cause exists to demonstrate that: (2) RUSCALLEDA-GONZÁLEZ committed the following violation of Federal Law: Title 18, <u>United States Code</u>, Section 924(c)(1)(A)- Knowingly Possessing and Carrying a Firearm in Furtherance of a Drug Trafficking Crime.

I hereby declare, under penalty of perjury, that the foregoing is true and correct to the best of my knowledge.

EDISON PARRA SALGUERO
Digitally signed by EDISON PARRA SALGUERO
Date: 2026.01.18 17:06:55 -04'00'

Edison Parra
Special Agent
Drug Enforcement Administration

Sworn in accordance with the requirements of Federal Rule of Criminal Procedure 4.1 by telephone at ___6:44 p.m.___ on January ___18___ 2026.

HON. HÉCTOR L. RAMOS-VEGA
UNITED STATES MAGISTRATE JUDGE
DISTRICT OF PUERTO RICO